Our fifth case this morning is McCurry v. Kenco Logistic Services. Good afternoon, Your Honors. May it please the Court, Jordan Hoffman on behalf of Edith McCurry, the appellant, Your Honor, this matter comes here on an appeal on an order of summary judgment in favor of the appellees Kenco and Morris. We believe that the issues raised are that Judge Sterling abuses discretion in not finding that genuine issues of material facts were raised with respect to the issues on summary judgment. Those issues would have been under group A in adverse employment action, engagement in protected activity, failure to promote pretext, Morris controlling the business relationship between Ed and Kenco, and Morris having knowledge of the day-to-day business operations. Ms. McCurry first began working at the Kenco-Morris facility warehouse in Manteno, Illinois in 1999. Before we get into the substance, Mr. Hoffman, do you agree that Ms. McCurry did not comply with the local rules in responding to the summary judgment? Your Honor, I kind of anticipate that you would ask that. I looked at the response and I would say technically that she attempted to address it, but she wasn't able to. My response would be that even though I have not cited that in a brief and don't have a case law in front of me, but I do believe that this being a Title VII case and retaliation being a part of it, that the totality of circumstances test is a big part of the findings of fact. And that courts, I think the Supreme Court, has stated that you have to give deference to a party's declarations, even if it's self-serving. And of course, not only did we have a declaration from Ms. McCurry, but we had the declaration also from Lynn Splitz, who was the human resource manager. So along with those declarations were numerous documents in support of the facts that material that she alleges. So I don't know that there's a case law that says that it's proper, even with respect to the local rule, that would allow a judge to just disregard totally and give no weight to the declarations and affidavits submitted by a plaintiff in that situation. Your brief on appeal also violates the rules of appellate procedure and the circuit rules. You filed a certification of compliance on behalf of Plaintiff Appellant Mary Madison, and your brief was 86 pages and was mostly rambling and incoherent and included five or six different fonts and font sizes and other technical violations of the rules as to form of briefs and content of briefs. Do you have an explanation for that? Your Honor, I don't like to make excuses. I'm a solo practitioner working, trying to get the help of both my clients and whoever can provide help to me, and trying to merge that information together and trying to keep my schedule up. It was very difficult to discern a coherent discrimination argument from your briefs? I understand. I accept that, Your Honor. If I may, I would like to attempt to make a coherent argument in the time I have remaining. You also accused your opponents of criminal obstruction of justice, which is a rash charge to make. Yes, Your Honor, I realize that too, and my apologies for that. That is not something that I believe exists, maybe a civil obstruction, if anything, but I think that that's a very difficult issue to allege in these types of cases, even if there had been, as alleged, tampering with documents and those sorts of things. Your equal pay claim rests on the allegation that Ms. McCurry's supervisor was paid more than she? Your Honor, Ms. McCurry started in 1999. Mr. Splits started in 2001. They did the same sorts of duties and activities. They played similar roles. They had responsibility for the same things. Mr. Splits, in his own declaration, said that he didn't monitor or check Ms. McCurry's work. There's case law that suggests in a two-person office, where there's really no supervisory activity going on, that he's really not the supervisor. And also, as time over period goes, that there should be a convergence in pay. There was a vast disparity between the level of raises and bonuses that Ms. McCurry received vis-a-vis Mr. Splits. So, and there's also case law support that in a situation like that over time that ought to narrow down given that those duties are very same or similar. They did not, in fact, have the same job descriptions. They didn't have the same job descriptions. He was a supervisory employee and she was a clerical employee. That is correct, Your Honor. That's enough to defeat the claim on its face. Well, Your Honor, there's case law that says that the job description in and of itself is not the only determinant. You have to look at the actual duties of the job to determine what was being done and the level of expertise that was being done. Right, and the undisputed record shows that, I'm not sure how to pronounce his name, Zeplit? Splits. Splits. He managed the human resources functions for the entire warehouse and she was a clerical employee. Well, Your Honor, if you looked at her, if you looked at Mr. Splits' own declaration, docket 119, he says that many of the duties that he did, Ms. McCurry also did, and he referred to her as a subject matter expert with respect to human resources and accounting. So he himself raises the issue, in addition to Ms. McCurry's declaration, that there was, that his duties, although he had a title, his duties did not necessarily mean that he was her supervisor, that he didn't monitor, he didn't check. The point is he was a supervisor and she was a clerical employee. He was a supervisor. Let's move on to the claim for failure to promote. The record shows no factual dispute on the fact that she never applied for the job that she's claiming now. Well, Your Honor, in the declaration at 119 and 117, it's mentioned that there was a policy that Kenkel had with respect to promotions. When they hired Lori Varvel to come in to be human resource manager, they did not follow that policy and it was never posted. And there was a procedure in which they would send it out to be posted. In fact, it would have been Ms. McCurry who would have received that information to post it. This was not done. In fact, this information should have been sent and it should have been posted within two business days. So as a result, Ms. McCurry felt that she was denied the opportunity or deterred the possibility of being able to apply for that position. So she, in fact, by not having the opportunity to even apply for that position, that there was a failure to promote. In addition, she had 15 years of experience doing human resources activity related to benefits, discipline, hiring, termination, leave of absence, 401K, and a number of things. Whereas Ms. Varvel had a couple of years experience. I think the previous situation, maybe she was at Sears Logistics. Maybe she managed one generalist. And she had no special certifications from the Society of Human Resources Management. And she didn't have any degree in human resources. I believe that there was a claim made there, but she didn't. We looked at her curriculum vitae, which was, I think, attached to some of these. In the record also, at 117.9, I believe, that she didn't have those certifications. She didn't manage Valerie Lilly. There was a organizational chart which showed that Valerie Lilly was a quality engineer. And her supervisor, actually, I believe at that time, would have been Mario Lopez, who was the general manager of the facility. Your Honor, I'd like to reserve the rest of my time for- Actually, your time has expired. Thank you. Thank you. Ms. Argentieri. Good afternoon, Your Honors. May it please the Court. My name is Julia Argentieri, and I represent Kenco Logistics Services and the individually named defendants in this matter. The Kenco defendants are here today to ask you to affirm the granting of summary judgment in our favor. The overarching question at summary judgment in an employment matter is whether a reasonable fact finder could find that the plaintiff's protected status caused the adverse employment action. This Court also has consistently held that not everything that makes an employee unhappy is an actionable adverse employment action. With those two guiding principles in mind, we're here today to answer the question of whether Edith McCurry was subjected to employment discrimination. Although portions of McCurry's arguments are difficult to navigate, the undisputed facts surrounding her employment at Kenco are exceedingly clear and should lead the Court to only one conclusion, that no discrimination or retaliation occurred at any point in time. Ms. McCurry no longer works at Kenco, but it is undisputed that she does not challenge her termination in this lawsuit. She remained employed at Kenco until the time that Kenco lost its contract at that Mars warehouse, at which time all employees at that site separated employment. The allegations that are raised by McCurry in this lawsuit amount to a number of non-actionable gripes, and in some cases, they are complaints about conduct that does not even relate to McCurry, such as the hiring of in-house legal counsel to defend against legal matters on behalf of Kenco. The first complaint addressed earlier by my opposing counsel relates to a Title VII claim of being paid less than her direct supervisor. The Poulard decision, 829F3D844, cited in our briefs, discusses this very similar fact pattern where the fact that a direct supervisor may have delegated a number of his duties to a subordinate or may have also not closely monitored the work of his subordinate does not change the fact that those positions are not similarly situated, and the fact that they are being paid differently does not show evidence of a discriminatory intent to discriminate on the basis of gender. Turning to the next argument raised by my opposing counsel, which is the failure to promote Ms. McCurry, in addition to the fact that there is no evidence in the record that she ever applied for a promotion, the undisputed facts that are in the record also reflect that Lori Varvel was more qualified for this position than Ms. McCurry would have been. And did the company follow its normal hiring practices? The company did. Attached to our motion for summary judgment is Ms. Varvel's application for employment, and our opposing side has made much of the fact that they don't believe that this job was posted, but in fact, Ms. Varvel presented verified answers to interrogatories at the lower court, which are part of the record at Docket 80 because they were attached to one of Ms. McCurry's earlier motions, and these interrogatory answers actually explain her entire process of applying for this job, which included submitting a resume on Indeed.com and then having a third-party recruiting company, ProLogistics, reach out to her and submit her resume, which is one of the options explicitly delineated in KENCO's hiring policy. Moving on to Ms. McCurry's next claim of discrimination, she argues that KENCO should not have issued a write-up to her, on top of the fact that this write-up was not an actionable adverse employment action, which I believe is clear from the Lloyd v. Swifty decision. She's also refusing to acknowledge the reason that she was written up. She was not written up for missing a punch at work or failing to clock out. She was written up for appearing to have misrepresented her hour's work when there was evidence that she had left work at 640 and then informed KENCO that she had only been at work until 5 o'clock p.m. As reflected in KENCO's motion for summary judgment, that was the reason that Ms. McCurry received a write-up, and there is no evidence to suggest that her write-up was motivated by any other reason. And she suffered no consequences for that? It was just a note in her personnel file? Correct. Ms. McCurry also argues that the hiring of Lori Varvel, in some way, took away her job duties and constituted a materially adverse action. The case law that she relies upon for this argument, which is primarily the TART Seventh Circuit decision, could not be more dissimilar from the present fact pattern that we're faced with. In that decision, there were office workers who primarily had electrical, computer repair duties, were then moved to positions where they were outdoors digging ditches all day. Ms. McCurry's duties virtually did not change at all when Lori Varvel was hired. She continued to do the exact same work, with the only difference being that employee relations matters that had primarily been passed along to the corporate office were now handled by someone on site. Another part of the retaliation claim appears to be a strange assertion that she was not selected as a witness in Mary Madison's case against the company, or her claim before the Illinois Department of Human Rights. Here's where the mysterious Mary Madison comes in. Correct. And it is unclear why Ms. McCurry is arguing how that would be an adverse action toward her, and certainly if Ms. Madison had wanted to select her as a witness, obviously she could have done so. But there is no evidence of retaliation on Ken Goh's part in making a decision of who would have knowledge to be selected as a witness at a fact-finding conference for someone else. So unless the court has any other questions, I'm already over my time, so I will just ask that summary judgment be affirmed. Thank you. Thank you. Mr. Davies. Good afternoon, Your Honors. My name is Tom Davies. I'm the attorney for Mars Incorporated. Not surprisingly, I agree with everything Ms. Archancheri just told you, and if she is right, then I'm done, because if there is no discrimination by Ken Goh in this matter, there can be no discrimination by Mars, because essentially Mars claims are all derivative of alleged discrimination perpetrated by Ken Goh. So I'll just move on to the issues of when could Mars be liable, even if there were discrimination found against Ken Goh. Based on this court's precedent, it would appear that in order to establish Mars' liability for such discrimination, the plaintiff would have to show that Mars either participated in the alleged discriminatory acts or knew about them and failed to take appropriate steps within its control to remedy the situation. When we look at, again, it's been discussed, the difficulty of trying to exactly sort out all of plaintiff's claims, but as I reviewed both the plaintiff's primary brief and its reply brief, its claims against Mars to try to fall into one of those two buckets essentially boil down to two things. First of all, a contention that because Mars agreed to fund the position of the HR manager, that that somehow triggers liability for alleged discrimination. I don't really understand that theory, and the references in the record to support that claim are really misleading, because repeatedly plaintiff says in both their main brief and their reply brief that they discussed the hiring of Lori Varvel. There's an e-mail that plaintiff repeatedly cited between Mr. Todd Moore, who was the boss of Mr. Coffey, who was the regional distribution manager. That e-mail simply says from Mr. Moore to Mr. Coffey, they want us to raise their overhead costs so that they can hire an HR manager. At some of our other distribution sites, there is an on-site HR manager, but the site is really inefficient already. I'm not sure I want to spend more money on it. What do you think? And Coffey replied, there are definitely some leadership issues at this site. I think it's worth a shot, and we think that's something to go ahead and do. No discussion about the identity of the candidate. No discussion about any underlying alleged discrimination claims. For the reason for that hiring, it simply is not in the record. The other basis for the claim against Morris relates to Mr. Coffey's attendance at morning meetings. Now, there is absolutely no record, no testimony in the record that would show in any way, shape, or form that any of the alleged issues regarding discrimination were ever discussed at those meetings. Ms. McCurry didn't ever attend the meetings. Interestingly, she said that she had opportunities regularly to talk to Mr. Coffey, who was approachable, but she never directly informed him of any of these alleged issues. Therefore, there's no basis for, under either of the prongs, to find Morris liable. The conspiracy claim is even a bit more bizarre, and the district court, we think, properly analyzed whether a potential conspiracy claim even lies under an employment discrimination action. We've discussed that in our brief, and we'll rely upon that. But the fact of the matter is, when we look at what the allegation is, it's, again, related to an alleged fraudulent affidavit. The court asked Mr. Hoffman about his allegations of obstruction of justice. We also take very seriously an allegation that we submitted a fraudulent affidavit to the court. The testimony cited by Mr. Hoffman for that piece of evidence, again, is not there. There is nothing in the record to show that Morris was involved in the hiring decision of Ms. Varvel, based on any knowledge of alleged discrimination. If there's nothing further, thank you. Thank you. All right, Mr. Hoffman, your time had expired. Yes, your time expired. So our thanks to both counsel, all counsel, I should say, and the case is taken under advisement.